IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LLOYD LUTHER,

     Plaintiff,                      No. 2:08-cv-02993 KJN

     v.

MICHAEL J. ASTRUE,
Commissioner of Social Security
of the United States of America,

     Defendant.                  ORDER

_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying plaintiff's applications under Titles II and Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. ("Act").[1] In his motion for summary judgment, plaintiff principally contends that the Administrative Law Judge ("ALJ") in this case erred by: (1) failing to credit all of plaintiff's severe impairments; (2) failing to develop the record; (3) failing to credit plaintiff's statements without clear and convincing reasons for

---

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties have voluntarily consented to proceed before a United States Magistrate Judge. 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73; Local Rule 301. (Dkt. Nos. 7, 9.) This case was reassigned to the undersigned by an order entered February 9, 2010. (Dkt. No. 21.)

1

doing so; and (4) failing to show that plaintiff could perform substantial gainful work that exists in the national economy. (Dkt. No. 19.) The Commissioner filed a cross-motion for summary judgment. (Dkt. No. 20.)

After careful consideration of the entire record, the arguments presented, and for the reasons stated below, the court denies plaintiff's motion for summary judgment and grants the Commissioner's cross-motion for summary judgment.

I.   BACKGROUND

   A.   Procedural Background

On September 15, 2005, plaintiff filed a Title II application for a period of disability and disability insurance benefits. (Administrative Transcript ("AT") 10, 60-62.) He also protectively filed an application for Title XVI Supplemental Security Income ("SSI") benefits. In both applications plaintiff alleged disability beginning September 29, 2000, but subsequently amended that allegation to allege an onset date of September 7, 2003. (AT 10.)

The Social Security Administration denied plaintiff's application initially on April 13, 2006, and upon reconsideration on November 14, 2006. (AT 10, 39-43, 48-52.) Plaintiff timely filed a request for a hearing by an ALJ on December 26, 2006. (AT 10.) Plaintiff appeared and testified at a hearing held on September 26, 2007, before the ALJ assigned to this action. (AT 10, 269-303.)

In a decision dated March 28, 2008, the ALJ denied plaintiff's application for benefits. (AT 7-21.) The ALJ found that plaintiff had the residual functional capacity ("RFC") to perform certain light work and therefore was not under a disability within the meaning of the Act.[2] (AT 15.) The ALJ's decision became the final decision of the Commissioner when the

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq. Generally speaking, SSI is paid to disabled persons with low income regardless of contributions. 42 U.S.C. §§ 1382 et seq. Under both benefit structures, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment

2

Appeals Council denied plaintiff's request for review.  (AT 3-5.)

   B.  Summary of Relevant Medical History and Evidence

   The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here.  As alleged by plaintiff in his motion for summary judgment, plaintiff suffers from a variety of conditions that cause symptoms including severe pain, shortness of breath, anxiety, migraines, weakness in the lower extremities, impaired balance, manipulative limitations, postural limitations and the need to take daily naps.  (Dkt. No. 19 at 5.)  Plaintiff's medical records reveal that he has had several medical problems with his back, namely his spine and discs, and that he suffers pain as a result.  (See AT 255-56.)  On June 6 and June 20, 2001, plaintiff received epidural steroid injections to help manage his pain.  (AT 255-59.)  Plaintiff testified that he experienced some mental impairments as well, namely panic attacks.  (AT 284-

---

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

  The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

85.) He stated that he had not received any psychological treatment, but was taking medication. (AT 286-88.) Plaintiff testified that he was also diagnosed with asthma and obesity, and that he was being tested for diabetes. (AT 290.) Plaintiff testified that he could stand for a little over 30 minutes before he had to sit down and put his legs up in the air or lie down and pull himself into a ball. (AT 292.) He stated that his doctor had prescribed him a walker but that he preferred to use a cane. (AT 294.) Plaintiff testified that he also frequently fell and stumbled around his house. (AT 294.) Plaintiff stated that he had difficulty lifting things such as a gallon of milk. (AT 294.)

Two Social Security consultative physicians examined plaintiff. (AT 128, 216). Both of those physicians determined that plaintiff would be able to stand and/or walk for six hours in an eight hour day.[3] (AT 132, 220). One physician found that plaintiff could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. (AT 220-21). The other examining physician found that plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently. (AT 132.) Both physicians found that certain postural limitations were appropriate in light of plaintiff's pain and other medical conditions. (AT 132, 221.)

Plaintiff's treating physician's office issued a residual functional capacity assessment, completed by physician's assistant Nina Weese ("PA Weese"). (AT 183.) PA Weese stated that plaintiff could lift less than 10 pounds occasionally and frequently, stand or walk a total of 25 minutes in an eight-hour workday, sit a total of three hours in an eight-hour workday, at 30-minute intervals, and that his pushing and pulling was limited to 90 degrees in his upper extension (with pain) and that he walked with effort. (AT 183.) PA Weese further stated that plaintiff could never climb stairs or ramps, balance, stoop, kneel, crouch or crawl. (AT 187.) PA Weese assessed plaintiff with additional exposure limitations and limitations on his handling capabilities. (AT 186.) Finally, she stated that plaintiff would be absent from work due to his

---

[3] Dr. Philip Seu, M.D. found that plaintiff would be able to stand or walk six hours in an eight-hour day with hourly breaks. (AT 132.)

4

impairments the majority of the time, approximately 20 work days per month.  (AT 186.)

During plaintiff's ALJ hearing, he was represented by counsel and testified on his own behalf.  (AT 271-303.)  Plaintiff testified regarding his work history, namely his former general labor jobs, as a cook at a fast food restaurant and as a driver at the Purple Heart Veteran's outlet.  (At 273-76.)  Plaintiff stated that he was injured on that job, was given a desk job instead, and was ultimately let go in March 2001.  (AT 275.)  Plaintiff filed a workers' compensation case and received a cash settlement on his workers' compensation claim.  (AT 279.)  Plaintiff was offered surgery on his back but declined to have it performed.  (AT 281.)

Plaintiff stated that once his workers' compensation payments ceased he looked for available positions, but found none.  (AT 295.)  He testified that he slept poorly, and took two naps a day.  (AT 296.)  He testified that he needed help from his wife getting dressed and that he would not be able to get to work at a regular time, such as 9 a.m., because he never knew how he would feel.  (AT 298).  Plaintiff also testified that he suffered from migraines, and that he could not do household chores.  (AT 292.)  He stated that his only requirement every day was to "make sure the grandkids get home," and to drive to and pick up one grandchild from school about two miles away from his house.  (AT 301.)  Plaintiff stated that he was in pain upon returning from this trip and that he took medications for that pain.  (Id.)

The ALJ concluded the hearing by ordering an internal consultative evaluation that focused on plaintiff's asthma, COPD (chronic obstructive pulmonary disease), obesity and degenerative disc disease of the neck and back.  The ALJ advised plaintiff to follow-up with a psychiatrist regarding his panic attacks, but stated that he, the ALJ, was going to focus more on the physical issues.  (AT 302-03.)

    C.    <u>Summary of the ALJ's Findings</u>

The ALJ conducted the required five-step evaluation and concluded that plaintiff was not disabled within the meaning of the Act.  At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since September 7, 2003, plaintiff's alleged onset

1  date. (AT 12-14.) At step two, the ALJ concluded that plaintiff had the following severe
2  impairments: "degenerative lumbar disc disease, cervical disc disease with a posterior tear at
3  C4-5, and obesity." (Id.) At step three, the ALJ determined that plaintiff's impairments, whether
4  alone or in combination, did not meet or medically equal any impairment listed in the
5  Commissioner's Listing of Impairments in the applicable regulations. (AT 24.) The ALJ further
6  determined that plaintiff was unable to perform any of his past relevant work. (AT 19.)
7  However, the ALJ found, considering the claimant's age, education, work experience and RFC
8  that there were jobs that exist in significant numbers in the national economy that the plaintiff
9  can perform. (AT 20.) He found that plaintiff could "perform light work as defined in
10 20 C.F.R. 404.1567(b) and 416.967(b) except occasionally bend, stoop, crouch, kneel, balance,
11 and crawl, no ladder climbing, and no overhead reaching with both upper extremities but can
12 reach in all other directions." (AT 15.)

        D.       <u>Appeals Council Proceedings</u>

14         Plaintiff, through his attorney, filed a request for a review of the ALJ's decision
15 before the Appeals Council of the Office of Hearings and Appeals of the Social Security
16 Administration. (AT 3-5.) On October 10, 2008, the Appeals Council denied plaintiff's request
17 for review, and the ALJ's decision became the final decision of the Commissioner. (AT 5.) The
18 Appeals Council's denial stated that it found that there was "no reason under our rules to review
19 the Administrative Law Judge's decision." (AT 3.) Further, the Appeals Council found that the
20 additional evidence submitted by plaintiff did not provide a basis for changing the ALJ's
21 decision. (AT 4.) More specifically, the Appeals Council stated:

> We also considered the additional evidence, a single page mental residual functional capacity questionnaire dated April 29, 2008, signed by Amy Barnhorst, M.D. No progress or treatment notes accompanied the questionnaire. Significantly, the questionnaire indicated that you would have only moderate limitations of functioning carrying out detailed instructions, interacting with the public, responding appropriately to work pressures or changes in a routine work setting. However, according to the questionnaire, you would have no limitations with simple instructions, and only slight

6

> limitations interacting with coworkers and supervisors. The Appeals Council finds that such is not incompatible with the Administrative Law Judge's decision concluding that there are a significant number of unskilled jobs that you can perform.

(AT 4.) The Appeals Council notified plaintiff that he could seek review of its decision by filing a civil action. (Id.)

## II.     ISSUES PRESENTED

Plaintiff contends that the ALJ committed four principal errors in reviewing his claim. First, plaintiff argues that the ALJ erred by failing to properly credit all of plaintiff's severe impairments at step two of the sequential evaluation. Second, plaintiff argues that the ALJ failed to develop the record regarding plaintiff's mental impairments. Third, plaintiff argues that the ALJ improperly rejected plaintiff's statements regarding his pain and limitations without clear and convincing reasons for doing so. Fourth, plaintiff argues that the ALJ erred by not using the services of a vocational expert to assess plaintiff's RFC.

## III.    STANDARD OF REVIEW

The district court reviews the Commissioner's decision to determine whether it is (1) free of legal error, and (2) supported by substantial evidence in the record as a whole. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009). This standard of review has been described as "highly deferential." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690 (citing Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews, 53 F.3d at 1039; see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he

ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). Findings of fact that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." Bray, 554 F.3d at 1222 (citing Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007)); see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."). However, the court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

IV.   ANALYSIS

    A.   The ALJ Properly Conducted The Step Two Analysis

Plaintiff first argues that the ALJ erroneously failed to include plaintiff's anxiety disorder and headaches as severe impairments at step two of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520. (Dkt. No. 19 at 14.) At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c). A severe impairment significantly limits a person's physical or mental ability to do basic work activities. Id. "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citing Social Security Ruling ("SSR") 96-3p (1996)). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education and experience were taken into account. Bowen, 482 U.S. at 153.

If a severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis. 20 C.F.R. § 404.1523. The ALJ "must consider the combined effect of all of the claimant's impairments on [his] ability to function, without regard to whether each alone [i]s sufficiently severe." Smolen, 80 F.3d at 1290; 20 C.F.R. § 404.1523.

Here, the ALJ found that plaintiff had the severe impairments of degenerative lumbar disc disease, cervical disc disease with a posterior tear and obesity. (AT 12.) Plaintiff argues that the ALJ should have also found his anxiety disorder and headaches to be severe impairments at step two. Plaintiff asserts that "[b]y not including [plaintiff's] mental impairment and migraine headaches as severe impairments at step two, the ALJ foreclosed any serious consideration of the impact they would have on his ability to function in a sustained manner— considered alone or in combination with his other impairments." (Dkt. No. 19 at 17.)

While these conditions may indeed be serious, plaintiff's argument ignores the function of step two as a gatekeeping mechanism to dispose of groundless claims. Once a plaintiff prevails at step two, by achieving a finding of some severe impairment, regardless of which condition is found to be severe, the Commissioner proceeds with the sequential evaluation, considering at each step *all* other alleged impairments and symptoms that may impact his ability to work. See 42 U.S.C. § 423(d)(2)(B) ("In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.").

Here, plaintiff prevailed at step two. Thus, the question becomes whether the ALJ properly considered the functional limitations of all medically determinable impairments at the remaining steps. See Smolen, 80 F.3d at 1290 (recognizing that if one severe impairment exists,

9

all medically determinable impairments must be considered in the remaining steps of the sequential analysis) (citing 20 C.F.R. § 404.1523).  As discussed below, the ALJ fully considered all of plaintiff's impairments, including his headaches and anxiety, and accommodated in the RFC finding the limitations that were supported by the record.  There was no error in the step two analysis.

    B.  The ALJ Adequately Developed The Record

    Plaintiff next contends that the ALJ failed to properly develop the record.  Disability hearings are not adversarial.  See DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991); see also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (recognizing that the ALJ has a duty to develop the record even when the claimant is represented).  However, the ALJ's duty to further develop the record is only "triggered . . . when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  The ALJ may develop the record in numerous ways, including, inter alia, by: (1) making a reasonable attempt to obtain medical evidence from the claimant's treating sources; (2) ordering a consultative examination when the medical evidence is incomplete or unclear and undermines the ability to resolve the disability issue; (3) subpoenaing or submitting questions to the claimant's physicians; (4) continuing the hearing; or (5) keeping the record open for supplementation.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); 20 C.F.R. § 404.1517; 20 C.F.R. § 416.917; 42 U.S.C. § 423 (d)(5)(A).  The claimant, however, ultimately bears the burden of proving that he has an impairment that meets or exceeds the Social Security disability listings.  Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005); 42 U.S.C. § 423(d)(5)(A) (recognizing that the claimant must furnish medical and other evidence of his disability); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled.").

    Plaintiff argues specifically that the ALJ failed to develop the record regarding

plaintiff's mental impairment. (Dkt. No. 19 at 17.) Yet, plaintiff's contentions ultimately belie his own argument. In his motion for summary judgment, plaintiff recognizes that the treatment record "documented [plaintiff's] anxiety and panic diagnoses; he testified that his major problems were caused by both his physical and mental impairments; his lawyer informed the ALJ that there was a mental component and pointed out the relevant treatment records; and the ALJ himself advised [plaintiff] to follow up with a psychiatrist regarding the panic attacks." (Dkt. No. 19 at 18.) The record contained adequate information to allow the ALJ to evaluate plaintiff's mental condition.

Plaintiff contends more specifically that the ALJ should have at least ordered a consultative examination to secure a psychiatric RFC to determine the extent of work-related limitation attributable to mental impairment. (Dkt. No. 19 at 18.) The court disagrees. The decision whether to order a consultative mental status examination is wholly discretionary. See 20 C.F.R. § 404.1517 ("[w]e may ask you to have one or more physical or mental examinations or tests"). As the defendant counters, to place an affirmative obligation to obtain a consultative examination upon the ALJ under the circumstances of this case would be tantamount to shifting the initial burden of proof from the plaintiff to the Commissioner. See 20 C.F.R. § 404.1512(c) (stating that the claimant "must provide medical evidence showing that [he has] an impairment and how severe it is during the time [he says] that [he] is disabled."); Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (recognizing that the claimant carries the burden to present "complete and detailed objective medical reports" of his or her condition from licensed medical professionals). Plaintiff's speculation regarding the additional information that a consultative examination might have produced were one ordered is insufficient to warrant remand. See Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001) (recognizing that the ALJ has broad latitude in ordering consultative examinations).

The ALJ fulfilled his duty to adequately develop the record. The record included the plaintiff's testimony that his anxiety and panic attacks were improving, but that he still

experienced attacks that would cause significant work-related limitations. (AT 287.) Plaintiff testified that he felt he had both physical and mental limitations. (AT 292.) The ALJ even suggested that plaintiff may want to see a psychiatrist because "just medication alone may not be the answer." (AT 302.) Upon consideration of all of the evidence, the ALJ found that plaintiff's mental impairment was in fact slight and was controlled by medication. (AT 13.) This is precisely the type of judgment call that the ALJ is legally entitled to make. Plaintiff has not offered any reason why he did not submit further psychological or medical records regarding his mental status to the ALJ or to Social Security. In light of the record, this court cannot hold that the ALJ erred in failing to secure a further consultative examination. Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld.").[4]

      C.     The ALJ Properly Addressed Plaintiff's Testimony

Plaintiff next contends that the ALJ erred in failing to properly evaluate or credit the intensity, persistence and limiting effects of plaintiff's symptoms as stated by plaintiff himself. (Dkt. No. 19 at 20.) The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Salee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th

---

[4] The plaintiff did submit additional evidence regarding his mental state to the Appeals Council. Social Security regulations provide that where new and material evidence is submitted to the Appeals Council with the request for review, the entire record will be evaluated and review of the ALJ's decision will be granted where the Appeals Council finds that the ALJ's action, findings or conclusion is contrary to the weight of the evidence currently of record. Id.; 20 C.F.R. § 404.970. The Appeals Council considered the plaintiff's additional evidence, a mental residual functional capacity questionnaire. (AT 4.) The Appeals Council noted that the "questionnaire indicated that [plaintiff] would have only moderate limitations of functioning carrying out detailed instructions . . . and no limitations with simple instructions, and only slight limitations interacting with coworkers and supervisors." (Id.) Accordingly, the Appeals Council found that this new evidence was not inconsistent with the ALJ's determination that there were a significant number of unskilled jobs that plaintiff could perform even considering his mental status. (Id.)

Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by a "specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ may then consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. Id. at 345-47. The ALJ may also consider (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ found plaintiff's allegations that his symptoms led to an impairment of his residual functional capacity from all work activity as contrary to the findings of the examining physicians as well as plaintiff's own testimony. The ALJ noted that plaintiff's medical records revealed that with medication, plaintiff's anxiety had improved, and that plaintiff did not require any medication changes. (AT 13.) The ALJ found no evidence of impaired memory or inability to follow instructions and noted that plaintiff was still able to drive. (Id.) The ALJ recognized that plaintiff engaged in light household chores that do not involve heavy lifting, drives his grandchild to school and goes grocery shopping once a week, activities inconsistent with a disabling impairment from all work activity. (AT 16.)

Plaintiff correctly contends that a claimant need not "vegetate in a dark room" to be found unable to engage in substantial gainful activity. Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987). However, the Ninth Circuit does not prevent the ALJ from taking into account a

claimant's level of activity, along with other probative evidence of disability or lack thereof. Magallanes v. Bowen, 881 F.2d 747 (9th Cir. 1989).

Further, the ALJ relied upon the treating records from the Sacramento Family Medical Clinic, and examination by Dr. Jaojoco and Dr. Seu in determining that plaintiff's treating records did not support his description of the severity of his symptoms.[5]  (AT 16.) Further, contrary to plaintiff's assertion, the ALJ considered the combined effect of all of the plaintiff's impairments without regard to whether they were determined to be severe in step two of the sequential analysis. (See AT at 19 "In making this determination, the undersigned has considered all the medical evidence, including the claimant's physical and mental impairments and how they may interrelate . . . .")

The ALJ made a full and complete description of the symptoms and clinical findings which led him to find the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent that they are inconsistent with the ALJ's RFC determination. (See AT 16-19, discussing, inter alia, that claimant has not participated in the treatment normally associated with a severe pain syndrome.)  Although plaintiff in his motion for summary judgment sets forth a contrary and different conclusion than the ones found by the ALJ, the court cannot find that the ALJ's conclusions were improper as a

---

[5] Although plaintiff notes that the ALJ erroneously states that the plaintiff was not prescribed a walker or a cane, this error was harmless. See Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006) ("We have . . . affirmed under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion."). Although the record reveals that the Sacramento Family Medical Clinic issued a prescription for a walker and Oxycontin to plaintiff, AT 161, the existence or nonexistence of a walker was far from the sole basis for the ALJ's credibility determination. In a thoroughly detailed analysis of all of plaintiff's medical records, AT 16-19, the ALJ found that Dr. Jaojoco and Dr. Seu noted breakaway weakness upon examination and that Dr. Seu noted poor effort by plaintiff during his consultative examination which indicated that he was exaggerating his conditions. (AT 19.) Moreover, plaintiff frequently uses a cane, which has not been prescribed and two examining doctors have stated that there is no need for this cane or other assistive device. (Id.)

matter of law.[6]

### D.  The ALJ Was Not Required to Use A Vocational Expert at Step Five

Finally, plaintiff argues that the ALJ erred by not using the services of a vocational expert to determine whether plaintiff could perform other jobs that exist in substantial numbers in the national economy.  (Dkt. No. 19 at 26-27 (citing, inter alia, Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001)).)  Plaintiff contends that the ALJ may not rely solely on the Commissioner's Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "GRIDS") to show the availability of other jobs if the GRIDS do not accurately describe a claimant's limitations.  (Dkt. No. 19 at 26 (citing Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985)).)

The Commissioner counters that the ALJ may, but is not required to, use a vocational expert at step five and that the non-exertional limitations that the ALJ imposed did not significantly erode the unskilled occupational base for unskilled light work.  (Dkt. No. 20 at 13-14 (citing SSR 83-14 and Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990)).)[7]

At step five of the sequential disability evaluation, the Commissioner bears the burden of proving that the claimant can perform other jobs that exist in substantial numbers in the national economy.  Bruton, 268 F.3d at 828 n.1.  This burden, as plaintiff recognizes, can be met in one of two ways: (1) by the testimony of a vocational expert; or (2) by reference to the

---

[6] The ALJ did recite some evidence of malingering, namely that upon examination by Dr. Seu, plaintiff provided poor effort in response to range of motion testing, and engaged in giveaway weakness which was inconsistent at times.  (AT 18, 129.)

[7] The Secretary of Social Security issues Social Security Rulings ("SSR") to clarify the Secretary's regulations and policies.  See Paulson v. Bowen, 836 F.2d 1249, 1252 n.2 (9th Cir. 1988).  Although SSRs are not published in the federal register and do not have the force of law, the Ninth Circuit "nevertheless give[s] deference to the Secretary's interpretation of its own regulations."  Bunnell, 947 F.2d at 346.

15

1  GRIDS. Id. Here, the ALJ used the GRIDS.[8]

2  There are limits on using the GRIDS, an administrative tool to resolve individual claims that fall into standardized patterns: "[T]he ALJ may apply [the GRIDS] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). The ALJ may rely on the GRIDS even when a claimant has combined exertional and nonexertional limitations, if nonexertional limitations are not so significant as to impact the claimant's exertional capabilities.[9] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (requiring significant limitation on exertional capabilities in order to depart from the GRIDS).

Here, the ALJ found that plaintiff retained sufficient capabilities, exertional or otherwise, to perform light work except that he should avoid occasional postural movements, such as bending, stooping, crouching, crawling or ladder climbing. The ALJ reasonably accommodated those limitations in crafting plaintiff's RFC. The ALJ did so after considering all of the plaintiff's symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical and other evidence. (AT 20, citing SSRs 83-14 and 85-

---

[8] The GRIDS are in table form. The tables present various combinations of factors the ALJ must consider in determining whether other work is available. See generally Desrosiers v. Sec'y of Health & Hum. Svcs., 846 F.2d 573, 577-78 (9th Cir. 1988). The factors include residual functional capacity, age, education, and work experience. For each combination, the grids direct a finding of either "disabled" or "not disabled."

[9] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a(b) (2003); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).
Non-exertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. § 416.969a(c) (2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).

15).

Plaintiff argues that the ALJ improperly rejected plaintiff's own testimony, Dr. Seu's opinion that plaintiff would need hourly breaks during the workday, and plaintiff's treating records regarding his underlying medical conditions. (Dkt. No. 19 at 24.) However, as explained above, the ALJ did not adopt plaintiff's description of his own limitations and was not required to do so. See Bayliss, 427 F.3d at 1217 ("In making his RFC determination, the ALJ took into account those limitations for which there was record support that did not depend on Bayliss's subjective complaints.")

Regarding plaintiff's contention that the ALJ "failed to credit" Dr. Seu's opinion that plaintiff would need hourly breaks to perform the demands of *medium* work activity, plaintiff misconstrues the ALJ's utilization of Dr. Seu's statements. (AT 132.) The ALJ did not adopt Dr. Seu's opinion in full because he found that the other consultative physician Dr. Jaojoco and the state agency physician Dr. Nguyen's opinions more appropriately restricted plaintiff to less strenuous light work. (AT 205-12, 220-21.) Neither of those physicians stated that plaintiff required any hourly breaks to perform light work.

The ALJ here, in determining whether plaintiff could make a successful adjustment to light work, considered the Social Security Rulings relevant to this determination. He recognized that the GRIDS may be used as a framework for decisionmaking even where a claimant has exertional and nonexertional limitations. See AT 22 (citing, inter alia, SSRs 83-12, 83-14, and 83-15[10]). The ALJ found that plaintiff's limitations had little or no effect on the occupational base of unskilled light work. (AT 20 "His limitation on no overhead reaching does not significantly erode the full range of light work as he is able to reach in all other directions and is only mildly limited in his ability to perform the full range of light work.") Plaintiff's argument *requiring* the use of a vocational expert in these circumstances is unpersuasive. Kerry v. Apfel,

---

[10] SSR 85-15 provides the ALJ with clarification of how the GRIDS may be used as a framework for evaluating solely nonexertional impairments.

242 F.3d 382 (9th Cir. 2000) (recognizing that an alleged non-exertional limitation does not automatically preclude application of the GRIDS, and that the ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations); Young v. Sullivan, 911 F.2d 180, 185 (9th Cir. 1990) (permissible for ALJ to rely on the GRIDS as a framework for decision making); see Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007) (affirming the ALJ and holding that the claimant's depression was not a sufficiently severe non-exertional limitation that required the assistance of a vocational expert). Plaintiff has not demonstrated that the ALJ erred by not consulting with a vocational expert.

V. CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. Judgment be entered in favor of the Commissioner.

DATED: September 1, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE